# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

LAW OFFICES OF SHIMSHON WEXLER, P.C.,
a New York professional company, individually
and as the representative of a class of similarly-
situated persons,

     Plaintiff,

v.

                                                CASE NO. 1:17-cv-08573-AKH

AICOM SOLUTIONS LLC d/b/a AICOM
CORPORATION; TIME WARNER CABLE LLC
d/b/a SPECTRUM; TIME WARNER CABLE
MEDIA LLC; CHARTER COMMUNICATIONS
INC.; CHARTER COMMUNICATIONS
OPERATING LLC; and JOHN DOES 1–10,

     Defendants.

---

## THE CHARTER DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

I.     Introduction ......................................................................................................... 1

II.    Relevant Factual Background ............................................................................. 2

III.   Legal Standard ................................................................................................... 6

IV.   Legal Argument ................................................................................................. 7

     A.   Plaintiff's TCPA Claim Fails as to the Charter Defendants for Several
Reasons. ................................................................................................... 7

          1.   Plaintiff's TCPA claim fails as to the Charter Defendants because
none of them was the "Sender" of the Transmission under the
TCPA. ......................................................................................... 8

               a.   None of the Charter Defendants is a "sender" under the
"goods-or-services-advertised" standard. ....................... 9

               b.   None of the Charter Defendants is a "sender" under the "on-
whose-behalf" standard. ................................................. 13

          2.   Plaintiff's TCPA claim fails because he consented to receive the
sole Transmission at issue. ........................................................ 15

          3.   The Transmission is not subject to the TCPA because it was not sent
over a telephone line and was not sent to a telephone facsimile
machine. ...................................................................................... 18

     B.   Plaintiffs Conversion Claim Fails as to the Charter Defendants for Several
Reasons. ................................................................................................. 20

          1.   Plaintiff's conversion claim fails as to the Charter Defendants
because they cannot be vicariously liable for AICOM Philippines's
allegedly tortious conduct. ........................................................ 21

          2.   Plaintiff's conversion claim fails because Plaintiff consented to
receive the Transmission. ........................................................... 21

          3.   Plaintiff's conversion claim fails because Plaintiff cannot show that
any alleged conversion harmed Plaintiff. ................................. 22

          4.   Plaintiff's conversion claim fails because the value of anything
allegedly converted is at most *de minimis* and thus not actionable. ......... 24

     C.   Plaintiff Lacks Standing to Bring the Instant Action Because He Assigned
His Claims Away. .................................................................................. 26

     D.   Plaintiff's Request for Injunctive Relief Fails as a Matter of Law. ...................... 26

V.    Conclusion ....................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACA Int'l v. Fed. Commc'n Comm'n,*
  885 F.3d 687 (D.C. Cir. 2018) ........................................................................9

*Am. Freedom Def. Initiative v. Metro. Transp. Auth.,*
  815 F.3d 105 (2d Cir. 2016)...........................................................................27

*ARcare v. Qiagen N. Am. Holdings, Inc.,*
  No. CV 16-7638 PA (ASX), 2017 WL 449173 (C.D. Cal. Jan. 19, 2017)............................24

*Bais Yaakov of Spring Valley v. Fed. Commc'n Comm'n,*
  852 F.3d 1078 (D.C. Cir. 2017) ........................................................2, 5, 9, 16

*Bridgeview Health Care Ctr., Ltd. v. Clark,*
  816 F.3d 935 (7th Cir. 2016) .....................................................11, 12, 13

*Bridgeview Health Care Ctr., Ltd. v. Clark,*
  No. 09 C 5601, 2013 WL 4495221 (N.D. Ill. Aug. 21, 2013)..................................14

*Burns v. Bank of Am.,*
  655 F.Supp.2d 240 (S.D.N.Y. 2008).................................................................18

*Cin-Q Autos, Inc. v. Buccaneers Ltd. P'ship,*
  No. 8:13-cv-01592, 2014 WL 7224943 (M.D. Fla. Dec. 17, 2014) ...........................15

*Citizens Bank of Clearwater v. Hunt,*
  927 F.2d 707 (2d Cir. 1991)..........................................................................6, 7

*Clarex Ltd. v. Natixis Secs. Am., LLC,*
  No. 12 Civ. 0722(PAE), 2012 WL 4849146 (S.D.N.Y. Oct. 12, 2012) ..................26

*Clayborne v. OCE Bus. Servs.,*
  381 Fed. Appx. 32 (2d Cir. 2010)...................................................................7

*Cmty. Vocational Sch. of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.,*
  307 F. Supp. 3d 402 (W.D. Pa. 2018)............................................................7

*Colavito v. New York Organ Donor Network, Inc.,*
  827 N.Y.S.2d 96 (2006)..................................................................................21

*Comprehensive Health Care Sys. of Palm Beaches, Inc. v. Vitaminerals VM/Orthopedics, Ltd.,*
  No. 5:16CV2183, 2017 WL 27263 (N.D. Ohio Jan. 3, 2017).....................10, 11, 12

*DeAngelis v. Corzine,*
  17 F. Supp. 3d 270 (S.D.N.Y. 2014).......................................................13, 14, 21

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006)......................................................................................................27

*G.M. Sign, Inc. v. Elm Street Chiropractic, Ltd.*,
    871 F. Supp. 2d 763 (N.D. Ill. 2012) ........................................................................25

*Garo v. Global Credit & Collection Corp.*,
    No. CV-09-2506-PHX-GMS, 2011 WL 251450 (D. Ariz. Jan. 26, 2011)............................10

*Obeid ex rel. Gemini Real Estate Advisors LLC v. La Mack*,
    No. 14 CV 6498-LTS-HBP, 2018 WL 205963 (S.D.N.Y. May 1, 2018) ..............................22

*Health & Res. Ctr., Ltd. v. Promologics, Inc.*,
    No. 16 C 9281, 2017 WL 5001284 (N.D. Ill. Nov. 2, 2017)..................................25

*Health One Med. Ctr., Eastpointe, PLLC v. Bristol-Myers Squibb Co.*,
    No. 16-cv-13815, 2017 WL 3017521 (E.D. Mich. July 17, 2017)........................12

*Jackson v. Bederman*,
    No. 12 Civ. 1338, 2014 WL 2805242 (S.D.N.Y. June 20, 2014)...........................18

*Landsman & Funk, P.C. v. Lorman Bus. Ctr., Inc.*,
    No. 08-cv-481-bbc, 2009 WL 602019 (W.D. Wis. Mar. 9, 2009) .........................17

*Leeandy Dev. Corp. v. Town of Woodbury*,
    134 F. Supp. 2d 537 (S.D.N.Y. 2001)........................................................................7

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1983)......................................................................................................7

*MBF Clearing Corp. v. Shine*,
    212 A.D.2d 478, 623 N.Y.S.2d 204 (1995) ..............................................................22

*Meyer v. Capital Alliance Grp.*,
    No. 15-CV-2405-WVG, 2017 WL 5138316 (S.D. Cal. Nov. 6, 2017) ............................13, 24

*Miller v. Time Warner Cable Inc.*,
    No. 8:16-CV-00329-CAS-ASX, 2016 WL 7471302 (C.D. Cal. Dec. 27, 2016) ...................27

*N. Cal. Power Agency v. Grace Geothermal Corp.*,
    469 U.S. 1306 (1984)....................................................................................................27

*Nakano v. Jamie Saddock, Inc.*,
    No. 98 CIV. 0515, 1999 WL 1225259 (S.D.N.Y. Dec. 20, 1999).....................................22, 24

*Newbro v. Freed*,
    409 F. Supp. 2d 386 (S.D.N.Y 2006)........................................................................21

*Paldo Sign and Display Co. v. Wagener Equities, Inc.*,
    825 F.3d 793 (7th Cir. 2016) ................................................12

*Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*,
    781 F.3d 1245 (11th Cir. 2015) ................................................14, 15

*Practice Mgmt. Support Servs., Inc. v. Appeal Sols., Inc.*,
    No. 09C1937, 2010 WL 748170 (N.D. Ill. Mar. 1, 2010) ................................................16

*Reyes v. Lincoln Auto. Fin. Servs.*,
    861 F.3d 51 (2d Cir. 2017)................................................16

*Sadowski v. Med1 Online, LLC*,
    No. 07 C 2973, 2018 WL 2224892 (N.D. Ill. May 27, 2008) ................................................7

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010)................................................27

*Sandusky Wellnes Cntr., LLC v. ASD Specialty Healthcare, Inc.*,
    863 F.3d 460 (6th Cir. 2017) ................................................16

*Savanna Group, Inc. v. Truan*,
    No. 10 C 7995, 2011 WL 703622 (N.D. Ill. Feb. 22, 2011)................................................25

*Schaffer ex rel. Schaffer v. Weast*,
    546 U.S. 49 (2005)................................................9

*Shyne v. L.R. Mack, Inc.*,
    193 N.Y.S. 70 (3d Dept. 1922) ................................................21

*Spokeo, Inc. v. Robins*,
    __ U.S. __, 136 S.Ct. 1540 (2016)................................................24

*Stonecrafters, Inc. v. Foxfire Printing and Packaging, Inc.*,
    633 F.Supp.2d 610 (N.D. Ill. 2009) ................................................25

*TigerCandy Arts, Inc. v. Blairson Corp.*,
    No. 09 Civ. 6215 (GBD) (FM), 2012 WL 1948816 (S.D.N.Y. May 30, 2012) ................................................24

*True Health Chiropractic, Inc. v. McKesson Corp.*,
    No. 16-17123, 2018 WL 3431723 (9th Cir. July 17, 2018)................................................16

**Statutes**

47 U.S.C. § 227(a)(3)................................................19

47 U.S.C. § 227(a)(5)................................................16

47 U.S.C. § 227(b)(1)(C) ................................................9

47 U.S.C. §§ 227(b)(1)(C) & (b)(1)(D) ...................................................16

47 U.S.C. § 227(b)(2)(D)(iv) ...................................................................15

47 U.S.C. § 227(b)(3) ..............................................................................27

**Other Authorities**

*In the Matter of Westfax, Inc. Petition for Consideration & Clarification*,
    30 F.C.C. Rcd. 8620 (2015) ...........................................................18, 19

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*
    *Junk Fax Prevention Act of 2005*,
    21 F.C.C. Rcd. 3787 (2006) ..................................................................17

47 C.F.R. § 64.1200(a)(4) ..........................................................................9

47 C.F.R. § 64.1200(a)(4)(iv) ................................................................5, 16

47 C.F.R. § 64.1200(f)(10) ..........................................................................9

47 C.F.R. § 64.1200(f)(13) ........................................................................19

Fed. R. Civ. P. 56(a) ...................................................................................6

Rest. (2d) Agency §§ 7–8 ..........................................................................13

Rest. (2d) Agency § 26 ..............................................................................13

## I.    INTRODUCTION

Plaintiff—a law firm whose sole employee is a serial litigant who supplements his income by filing lawsuits under various consumer-protection statutes—filed this putative class action because it received a single electronic transmission ("Transmission") from a company named "AICOM" referencing "Time Warner Cable Business Class Services."  Based on this, Plaintiff asserts two claims against several "Time Warner Cable" and "Charter" entities (collectively, "Charter Defendants"),[1] AICOM Solutions LLC, and 10 Doe Defendants: (1) a claim for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") because they allegedly "sent" a "facsimile" that was "unsolicited" and did not contain an "opt-out notice;" and (2) a piggyback claim for conversion because the "facsimile" allegedly deprived Plaintiff of the use of his "fax machine[], paper, toner, and employee time."  As the undisputed evidence conclusively shows, Plaintiff's allegations are false, and his claims are subject to summary judgment.

As an initial matter, the undisputed facts compel the conclusion that Plaintiff's TCPA claim fails for several, independent reasons.  First, none of the Charter Defendants sent the Transmission. Instead, non-party AICOM Philippines, Inc. ("AICOM Philippines")—with which the Charter Defendants have no contractual relationship—sent the Transmission without the Charter Defendants' (or any other Charter or Time Warner Cable entity's) knowledge or involvement, much less approval.  As such, none of the Charter Defendants is the "sender" of the Transmission under either the plain language of the TCPA or the Federal Communication Commission ("FCC")'s interpretations of that term.  Second, the Transmission was sent with Plaintiff's consent and thus did not require any "opt-out notice" under the TCPA following the D.C. Circuit's ruling

---

[1] Though not material to this motion, for purposes of background, Time Warner Cable, Inc. merged out of existence into an indirect subsidiary of Charter Communications, Inc. in 2016.  After the merger, Charter and the various Time Warner Cable entities began offering service under the "Spectrum" brand name in different regions.  (*See* ECF No. 44 ¶ 11.)

in *Bais Yaakov of Spring Valley v. Fed. Commc'n Comm'n* , 852 F.3d 1078 (D.C. Cir. 2017) ("*Bais Yaakov*").  And <u>third</u>, the Transmission at issue is not even subject to the TCPA because it was not sent over a telephone line to a "telephone facsimile machine" as that term is defined in the TCPA. Rather, the Transmission was sent and received over the internet, as an end-to-end web communication between two "virtual fax" services.

Plaintiff's common-law conversion claim fares no better.  <u>First</u>, the Charter Defendants did not send the Transmission and cannot be vicariously liable for AICOM Philippines's conduct in doing so.  That is because there is no evidence that AICOM Philippines was acting as an actual or apparent agent of any of the Charter Defendants when it sent the Transmission.  <u>Second</u>, the Transmission was sent with Plaintiff's consent.  <u>Third</u>, there is no evidence to which Plaintiff can cite to carry his burden of establishing any actionable injury suffered as a proximate result of AICOM Philippines's conduct in sending the Transmission.  And <u>fourth</u>, even if Plaintiff's choice to print the Transmission (that he consented to) resulted in a loss of toner and paper or could be attributed to anyone but Plaintiff, any such loss would be *de minimis* and thus not actionable.

Finally, even if Plaintiff's claims were not subject to dismissal for the foregoing reasons, the Charter Defendants would still be entitled to summary judgment because Plaintiff contractually assigned his claims to his virtual fax provider when he signed up for service.  His request for injunctive relief also fails for two additional reasons: it is moot and he has an adequate remedy at law.  For all these reasons and the others discussed herein, the Court should grant the Charter Defendants' Motion for Summary Judgment and dismiss this case in its entirety.

## II.    RELEVANT FACTUAL BACKGROUND

Plaintiff (the Law Offices of Shimshon Wexler) is a New York professional company with a single employee: Shimshon Wexler.  (Charter Defendants' Statement of Undisputed Material Facts ("SUMF") ¶¶ 1–2.)  Since 2010, Mr. Wexler has supplemented his law practice income by

filing more than a dozen lawsuits on his own behalf, with the proceeds from those lawsuits accounting for roughly 10% of his income during this time.  (SUMF ¶ 3.)  It is thus unsurprising that Mr. Wexler found an opportunity to bring a lawsuit on behalf of Wexler P.C.  What is surprising is that he chose to bring this action against the Charter Defendants, and then to maintain it after his claims were proven factually and legally meritless.

The most important facts are as follows: on December 6, 2016, Plaintiff[2] received a phone call from AICOM Philippines, a Philippines-based company with whom none of the Charter Defendants has ever had a contractual relationship.  (SUMF ¶¶ 4–5.)  During the ensuing conversation, the AICOM Philippines agent asked for Plaintiff's email or fax number, so that AICOM Philippines could send Plaintiff a telecommunications service proposal for his New York law practice.  (SUMF ¶ 6.)  Plaintiff provided his "fax" number and, thereafter, on December 14, 2016, AICOM Philippines sent the Transmission to that number.  (SUMF ¶ 7.)

The Transmission provided information regarding telecommunications services and asked Plaintiff to contact "John Martin" if he was interested in retaining John Martin's services as an "Account Manager" to "switch" Plaintiff's telecommunications services.  (SUMF ¶¶ 8, 11.)  The Transmission listed, as John Martin's contact information, an AICOM telephone number, AICOM fax number, and AICOM email address.  (SUMF ¶ 11.)  The Transmission did not refer to or provide contact information for any of the Charter Defendants—which is unsurprising given that none of the Charter Defendants (nor any other Charter or Time Warner Cable entity) prepared, authorized, approved, sent, or even knew about the Transmission.  (SUMF ¶¶ 12–13, 46.)

---

[2]  For ease of reading and to streamline their brief, the Charter Defendants refer to Mr. Wexler and Wexler P.C. interchangeably as "Plaintiff."  Mr. Wexler is the only person Wexler P.C. has ever employed and Mr. Wexler testified as Wexler P.C.'s corporate representative in this matter.  (SUMF ¶ 1–2.)

And while Plaintiff provided AICOM Philippines with a "fax" number on December 6, 2016, the Transmission was not actually initiated or received by a fax machine.  (SUMF ¶¶ 5–7, 14–16.)  In fact, neither AICOM Philippines nor Plaintiff owns a physical fax machine; instead, they both utilize "virtual fax" services.[3]  (SUMF ¶ 14.)  Using its virtual fax service, voip.ms, AICOM Philippines sent the Transmission as follows: (1) it attached the Transmission to an email; (2) it typed Plaintiff's number into the subject field of the email; and (3) it sent the email to "fax@voip.ms."  (SUMF ¶ 15.)  Plaintiff thereafter received the Transmission on his "virtual fax" service, *myfax*®.  (SUMF ¶ 16.)

With *myfax*®, customers like Plaintiff receive faxes "as emails, with the fax attached as a PDF or TIFF[.]"  (SUMF ¶ 18.)  Indeed, "[u]nlike with traditional facsimiles, *myfax*® subscribers use <u>the internet, not a traditional phone line</u>, to send and receive facsimiles[.]"  (SUMF ¶ 19 (emphasis added).)  In light of this, transmissions received by *myfax*® "are not automatically printed upon receipt."  (SUMF ¶ 22.)  Instead, users must affirmatively choose to print such transmissions, as Plaintiff claims to have done here.  (SUMF ¶ 23.)  Further, by using *myfax*®, Plaintiff agreed to be bound by the *myfax*® terms and conditions, which include an assignment of "any and all legal claims available against any third party as a result of [the] receipt of any unsolicited fax advertisements, including but not limited to claims under the TCPA."  (SUMF ¶ 24–25.)

In deposition, Plaintiff admitted he has no idea who authored the Transmission, no knowledge about who sent it, and no knowledge of whether any Time Warner Cable or Charter entity even knew about the Transmission before the lawsuit.  (SUMF ¶ 26.)  He also admitted he

---

[3]  Plaintiff did not even have telephone connectivity at his office and thus had no way of installing a traditional physical "fax" machine.  (SUMF ¶ 21.)

made no attempt to contact John Martin—the AICOM Philippines agent identified in the Transmission.  (SUMF ¶ 27.)  Similarly, Plaintiff never spoke with or attempted to contact any of the Charter Defendants regarding the Transmission after he received it.  (SUMF ¶ 28.)

Nevertheless, on March 24, 2017, Plaintiff filed this action against the Charter Defendants and AICOM Solutions, LLC—a defunct New Jersey company that has not done business in many years—asserting TCPA and common-law conversion claims against both.  (SUMF ¶¶ 29–30.)  When Plaintiff first filed, the FCC's then-existing TCPA-implementing regulations purported to require "opt-out" notices on all fax advertisements, including those sent with the recipient's consent.  Thus, when Plaintiff first filed, Plaintiff thought he had a TCPA claim, notwithstanding his provision of his fax number to AICOM Philippines, because there was no opt-out notice on the Transmission.  *See* 47 C.F.R. § 64.1200(a)(4)(iv).  However, on March 31, 2017—a week after Plaintiff filed the instant action—*Bais Yaakov* struck down the regulation requiring opt-out notices on solicited advertisements.  *See Bais Yaakov*, 852 F.3d at 1082 (striking down 47 C.F.R. § 64.1200(a)(4)(iv) as *ultra vires* given that the TCPA "does not require (or give the FCC authority to require) opt-out notices on solicited fax advertisements")).

Rather than dismissing his Complaint in the wake of *Bais Yaakov* since he consented to the Transmission, Plaintiff filed an Amended Complaint, doubling down on his now-invalid claim that the Transmission violated the TCPA because it did not have an opt-out notice and adding allegations in attempt to avoid the Charter Defendants' Motion to Dismiss for lack of personal jurisdiction.  (*See generally* ECF No. 44.)  Thereafter, in connection with the Charter Defendants' motion to dismiss, and in an attempt to avoid the effect of *Bais Yaakov*, Plaintiff submitted a declaration in which he carefully states: "[t]o the best of my knowledge and recollection, I have never had any telephone conversation with anyone from AICOM."  (*See* ECF No. 48-1, ¶ 14;

SUMF ¶ 31.)  Ultimately, the U.S. District Court for the Northern District of Georgia granted the Charter Defendants' Motion and transferred this case to the Southern District of New York.  (*See* ECF No. 51; SUMF ¶ 32.)

Thereafter, on March 1, 2018, the Court entered its Case Management Plan in this case, in which it bifurcated discovery into two phases: one restricting discovery to Plaintiff's individual claims, and a second phase to address "[a]ll remaining non-expert discovery."  (*See* ECF No. 67 § B.2; SUMF ¶ 33.)  The Court did this at the Charter Defendants' request, such that it could rule on whether Plaintiff had a viable claim before the parties incurred considerable expense in class discovery.  (*See id.* ECF No. 67 ¶ 2; SUMF ¶ 34.)

The first phase of discovery closed on May 4, 2018.  (*See* ECF No. 67; SUMF ¶ 35.)  During that phase of discovery, the Parties exchanged Interrogatories and Requests for Production of Documents pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, subpoenaed third parties pursuant to Rule 45, and the Charter Defendants took Plaintiff's deposition.  (SUMF ¶ 36.)  Plaintiff, on the other hand, did not take any depositions and made no effort to secure discovery from AICOM Philippines despite knowing that AICOM Philippines—not the Charter Defendants—sent the Transmission at issue.  (SUMF ¶ 37.)

The Charter Defendants now move for summary judgment.

### III.    LEGAL STANDARD

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The "moving party has the initial burden of demonstrating that there is no genuine issue of material fact for trial[, which] may be satisfied by pointing out the absence of evidence to support the non-movant's claims."  *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1983); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The "non-movant then bears the burden of establishing the existence of elements essential to its case, which it would have to prove at trial." *Id.*

To meet this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.   Thus, "[c]onclusory allegations cannot create a genuine issue of fact, nor may a party 'create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.'" *Clayborne v. OCE Bus. Servs.*, 381 Fed. Appx. 32, 35 (2d Cir. 2010) (quoting *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996)) (citing *Fletcher v. Atex, Inc.*, 68 F.3d 1456, 1456 (2d. Cir. 1995); *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d. Cir. 1997)).  Moreover, "[t]he mere existence of an alleged factual dispute between the parties will not defeat a motion for summary judgment." *Leeandy Dev. Corp. v. Town of Woodbury*, 134 F. Supp. 2d 537, 542 (S.D.N.Y. 2001).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## IV.   LEGAL ARGUMENT

### A.   Plaintiff's TCPA Claim Fails as to the Charter Defendants for Several Reasons.

As one court recently explained, "to survive a motion for summary judgment" on a TCPA fax claim, "the plaintiff must point to specific evidence in the record sufficient to establish: (1) the defendant utilized a telephone facsimile machine [which requires use of a telephone line] to send one or more faxes; (2) that the transmission constituted advertisements; and (3) that the defendant sent the transmissions without the recipient's consent."[4] *Cmty. Vocational Sch. of Pittsburgh, Inc.*

---

[4] The Charter Defendants bear the burden of proof with respect to a defense of consent. *See, e.g.*, *Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2018 WL 2224892, at *4 (N.D. Ill. May 27, 2008)

*v. Mildon Bus Lines, Inc.*, 307 F. Supp. 3d 402, 418 (W.D. Pa. 2018) (quotations omitted); *see also* 47 U.S.C. § 227 (making it unlawful for any person "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement" absent certain conditions).[5]  Here, the Charter Defendants did not send the Transmission; AICOM Philippines did, and it did so without the Charter Defendants' (or any other Charter or Time Warner Cable entity's) approval, knowledge, or involvement.  Further, the Transmission is not actionable under the TCPA because it was sent with Plaintiff's consent.  And finally, the Transmission is not even subject to the TCPA because it was sent over the internet, not from one fax machine to another over a phone line.  Accordingly, Plaintiff's TCPA claim must be dismissed.

> **1.       Plaintiff's TCPA claim fails as to the Charter Defendants because none of them was the "Sender" of the Transmission under the TCPA.**

As noted above, the TCPA prohibits "send[ing], to a telephone facsimile machine, an unsolicited advertisement" unless certain criteria are met.  47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(4).  The TCPA is silent as to what it means to "send" such an advertisement, or who a "sender" of such an advertisement is.  *See generally* 47 U.S.C. § 227.  The FCC's implementing regulations purport to define the "sender" of an advertisement as "the person or entity on whose behalf a [fax] advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement."  47 C.F.R. § 64.1200(f)(10).  While it is doubtful that such a sweeping

---

(citing *In re Matter of Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991 & the Junk Fax Prevention Act of 2006*, 21 F.C.C.R. 3787, 3794 (Apr. 6, 2006).

[5] *See also Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005) (holding that, where text of statute is "silent on the allocation of the burden of persuasion," courts "begin with the ordinary default rule that plaintiffs bear the risk of failing to prove their claims") (citing 2 J. Strong, McCormick On Evidence § 337, at 412–15 (5th ed. 1999); C. Mueller & L. Kirkpatrick, Evidence § 3.1, p. 104 (3d ed. 2003)).

definition of "sender" is authorized under the TCPA,[6] Plaintiff cannot carry his burden of showing that any of the Charter Defendants was the "sender" of the Transmission under either of the standards encompassed in that definition.  Instead, the record evidence confirms the opposite.  For this reason alone, Plaintiff's TCPA claim fails against the Charter Defendants.

        a.      <u>None of the Charter Defendants is a "sender" under the "goods-or-services-advertised" standard.</u>

As an initial matter, the undisputed evidence demonstrates that none of the Charter Defendants was a "sender" of the Transmission under the "goods-or-services-advertised" standard, for two reasons.

First, none of the Charter Defendants' goods or services are "advertised or promoted" in the Transmission.  Instead, the Transmission holds out <u>AICOM</u> as a seller of services, *i.e.*, its services in procuring telephone and internet services as an "Account Manager" for Plaintiff. (SUMF ¶ 9.)  Indeed, the Transmission suggests that, as a procurer of services, AICOM has already compared various available telecommunications packages offered by "Time Warner Cable Business Class," "Verizon," and "AT&T" on Plaintiff's behalf—thus demonstrating the value of AICOM's services to Plaintiff.   (SUMF ¶ 10.)   Neither Time Warner Cable Business Class, Verizon, or AT&T are named parties in this case; nor is there any evidence that any of the Charter Defendants are affiliated with such entities.  Further, the Transmission asks Plaintiff to contact John Martin, an <u>AICOM</u> employee, if he is interested in AICOM's services, and provides an <u>AICOM</u> telephone number, fax number, and email address.  (SUMF ¶¶ 8, 11.)

---

[6]  *See, e.g.*, *ACA Int'l v. Fed. Commc'n Comm'n*, 885 F.3d 687, 700 (D.C. Cir. 2018) (striking down FCC's regulatory definition of "automatic telephone dialing system" under the TCPA as arbitrary and capricious because it was "an unreasonably, and impermissibly, expansive" definition of term); *Bais Yaakov*, 852 F.3d at 1082 (striking down solicited fax rule as ultra vires given that the TCPA "does not require (or give the FCC authority to require) opt-out notices on solicited fax advertisements").

By contrast, none of the Charter Defendants appears by name anywhere in the Transmission itself, nor does any contact information for any of the Charter Defendants.  (SUMF ¶ 12.)  *See, e.g.*, *Comprehensive Health Care Sys. of Palm Beaches, Inc. v. Vitaminerals VM/Orthopedics, Ltd.*, No. 5:16CV2183, 2017 WL 27263, at *5 (N.D. Ohio Jan. 3, 2017) (granting motion to dismiss TCPA claim and holding plaintiff had not sufficiently alleged defendant Hygenic was "sender" of fax advertisement where fax urged recipient to contact third party VM regarding Hygenic's product, included VM's contact information, and contained no contact information for Hygenic).  In fact, the only Time Warner Cable entity that even provided services in New York County at this time—*i.e.*, the only Time Warner Cable entity whose services *could possibly* be considered as being advertised in the Transmission—was Time Warner Cable New York City LLC ("TWC NYC"), a non-party that is not directly connected to any of the named Charter Defendants.  (SUMF ¶ 38.)

Accordingly, Plaintiff cannot create a genuine issue of fact as to whether any of the Charter Defendants' services were advertised in the Transmission.  *See, e.g.*, *Garo v. Global Credit & Collection Corp.*, No. CV-09-2506-PHX-GMS, 2011 WL 251450, at *3 (D. Ariz. Jan. 26, 2011) (in granting summary judgment and dismissing robocall-TCPA claim, holding services offered by corporate affiliate or affiliates insufficient to create issue of fact as to whether *defendant's* calls potentially "encourage[ed] the purchase or rental of . . ." or advertised "commercial availability or quality of property, goods, or service" where plaintiffs did not name such affiliated entities, nor include allegations that affiliated entities were alter egos of defendant, nor seek to amend complaint to include such allegations).

However, even if the services advertised in the Transmission were provided by one of the named Charter Defendants (they were not), that alone would be insufficient to establish liability

10

as "the very notion of advertising one's goods entails that one must do something to advertise them." *See Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 938 (7th Cir. 2016). Were this not the case, "entities could engage in 'sabotage liability.'" *See, e.g.*, *Comprehensive Health Care*, 2017 WL 27263, at *5. One court has explained the "sabotage liability" issue as follows:

> By way of illustration, it would allow a rabid Tampa Bay Buccaneers fan—with a rhino helmet, red face paint, and an undying devotion to the organization—to trigger *per se* liability for the organization under the TCPA by gratuitously, and without directive from or notice to the organization, promoting season ticket sales via fax. The same could be true of a random individual in Boston, mind brewing with *scienter*, who works to implicate the New York Yankees by advertising their season tickets.[ ] ***Universal liability for complete inaction was not contemplated by Congress in passing the TCPA and does not appear to have been contemplated by the FCC in crafting and interpreting its regulations***.

*Id.* (quoting *Cin-Q Autos, Inc. v. Buccaneers Ltd. P'ship*, No. 8:13-cv-01592, 2014 WL 7224943, at *6 (M.D. Fla. Dec. 17, 2014)) (emphasis added). Even Plaintiff recognized in deposition that it would be absurd to interpret the FCC's regulations in a manner that would permit sabotage liability:

> Q: If Coca-Cola faxed customers referencing Pepsi Cola products, would that be actionable under [the] TCPA? . . .
>
> A: I – I – I would leave that decision up to my attorneys. If you're asking me personally what I . . . believe about that? . . . ***My understanding would be that they are not liable for that because, you know, the other company is kind of sabotaging them.***
>
> Q: It's the same if [Charter Defendants' counsel's firm] sent out a fax advertising the services of [Plaintiff], would Wexler, P.C. be liable under your understanding of the TCPA? . . .
>
> A: If I didn't – you know, ***if I didn't have any relationship with you guys, you know, I can't – I can't, you know, imagine that you guys would be – that I would be liable for the faxes that you send.***

(SUMF ¶ 39.)

For this reason, courts—including very recently, the Seventh Circuit—routinely decline to extend TCPA liability where the Plaintiff fails to prove the defendant took some action that

resulted in or contributed to the offending facsimile being sent.  *See, e.g.*, *Clark*, 816 F.3d at 938–39; *Comprehensive Health Care*, 2017 WL 27263, at *5; *Paldo Sign and Display Co. v. Wagener Equities, Inc.*, 825 F.3d 793, 796–98 (7th Cir. 2016); *Health One Med. Ctr., Eastpointe, PLLC v. Bristol-Myers Squibb Co.*, No. 16-cv-13815, 2017 WL 3017521, at *3–5 (E.D. Mich. July 17, 2017).  Here, Plaintiff cannot show that the Charter Defendants took *any* action relative to the Transmission.  Indeed, Plaintiff conceded—in a deposition that took place at the end of the discovery period—that he has no knowledge of:

- Who authored the Transmission (SUMF ¶ 40);

- Who sent the Transmission (*id.* ¶ 41);

- Whether the Charter Defendants even knew about the Transmission before the instant lawsuit (*id.* ¶ 42);

- Whether the Charter Defendants approved either the substance of the Transmission or the Transmission itself (*id.* ¶ 43); and/or

- The Charter Defendants' policies with respect to such transmissions.  (*Id.* ¶ 44.).

Given these admissions, Plaintiff cannot overcome the undisputed record evidence, which shows that none of the Charter Defendants (nor any other Charter or TWC entity) was involved in any way in the sending of the Transmission.  Instead, the undisputed evidence proves that:

- AICOM Philippines, not any of the Charter Defendants, sent the Transmission (*id.* ¶¶ 7, 15);

- None of the Charter Defendants (or any other Charter or TWC entity) prepared, authorized, approved, or sent the Transmission (*id.* ¶ 13);

- AICOM Philippines "did not seek or obtain approval to send the [Transmission] (or any other facsimile) from the Charter Defendants or any other Charter or Time Warner Cable entity," did not send the Transmission at the request of any of the Charter Defendants or any other Charter or Time Warner Cable entity, and did not tell the Charter Defendants or any other Charter or Time Warner Cable entity it was sending the Transmission (*id.* ¶ 46); and

- Even according to AICOM Philippines, the Charter Defendants "had no way to know AICOM [Philippines] was sending the" Transmission (*id.* ¶ 47).

For these reasons, the undisputed material facts demonstrate that none of the Charter Defendants is a "sender" of the Transmission under the "goods-and-services-advertised" standard.

> b.    None of the Charter Defendants is a "sender" under the "on-whose-behalf" standard.

Nor are any of the Charter Defendants the "sender" under the on-whose-behalf standard. Because the TCPA does not define what it means for a fax to be sent "on behalf" of an entity, courts have looked to agency rules to determine whether a fax is sent "on behalf" of an entity. *See, e.g.*, *Clark*, 816 F.3d at 938; *Meyer v. Capital Alliance Grp.*, No. 15-CV-2405-WVG, 2017 WL 5138316, at *10–12 (S.D. Cal. Nov. 6, 2017) (dismissing TCPA claim after finding fax not sent "on behalf" of defendants given lack of agency).  Under those rules, an agent's authority may be actual or apparent.  *See generally* Rest. (2d) Agency §§ 7–8; *see also DeAngelis v. Corzine*, 17 F. Supp. 3d 270, 286 (S.D.N.Y. 2014).  Here, the undisputed record evidence confirms that AICOM Philippines was not acting as either an actual or apparent agent of the Charter Defendants.

First, it is undisputed that AICOM Philippines did not send the Transmission with any of the Charter Defendants' actual authority.  Actual authority is created by "(1) the principal's manifestation of intent to grant authority to the agent, and (2) agreement by the agent." *Deangelis*, 17 F. Supp. 3d at 286; *see also* Rest. (2d) Agency § 26.  As noted above, AICOM Philippines and the Charter Defendants never had an "agreement" of any sort, and AICOM Philippines "did not seek or obtain approval to send the [Transmission] (or any other facsimile) from the Charter Defendants or any other Charter or Time Warner Cable entity," did not send the Transmission at the request of any of the Charter Defendants, and did not tell the Charter Defendants it was sending the Transmission.  (SUMF ¶¶ 13, 45–46.)  Instead, even according to AICOM Philippines, the Charter Defendants "had no way to know AICOM [Philippines] was sending the" Transmission.

(*Id.* ¶ 47.)  Thus, AICOM Philippines was not, and could not have been, acting as an agent of any of the Charter Defendants under an actual agency theory.

Second, it is undisputed that AICOM Philippines did not send the Transmission with any of the Charter Defendants' apparent authority.  Apparent agency is "the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the [principal], arising from and in accordance with the [principal]'s *manifestations to such third persons*."  *DeAngelis*, 17 F. Supp. 3d at 286 (quoting Rest. (2d) Agency § 8) (emphasis added). Importantly, "apparent authority is created *only by the representations of the principal to the third party*," meaning an agent cannot "create apparent authority by his own actions or representations." *Id.* (quoting *Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir. 1989)) (emphasis added).  Here, there is <u>no</u> evidence suggesting that any of the Charter Defendants (or any other Charter or Time Warner Cable entity for that matter) communicated anything to Plaintiff suggesting that AICOM Philippines had authority to act on the Charter Defendants' behalf.  *See, e.g.*, *Bridgeview Health Care Ctr., Ltd. v. Clark*, No. 09 C 5601, 2013 WL 4495221, at *3 (N.D. Ill. Aug. 21, 2013) (in denying motion to reconsider order granting partial summary judgment in TCPA fax case based on apparent agency theory where "Defendant had made no manifestation, direct or indirect, to" fax recipients, holding "the unauthorized act of Defendant's agent alone is not a manifestation sufficient to create an 'apparent agency' relationship").

Finally, even courts that have wrongly declined to strictly apply agency principles in the "on-whose-behalf" analysis have still required that there be some direction by or relationship with a faxing party for there to be a fact question as to whether a fax was sent on that defendant's behalf. *See, e.g.*, *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1257–58 (11th Cir. 2015) (rejecting application of agency principles, but holding issue of fact existed as

to whether faxes at issue were sent on behalf of defendant only because record evidence established that defendant: (1) hired marketing manager to market business and gave manager "free rein" to market; (2) marketing manager contracted with party that sent faxes in question; and (3) transmitting entity sent fax advertisement after receiving payment from defendant); *Cin-Q Autos*, 2014 WL 7224943, at *7–8 (following *Sarris* in rejecting strict agency principles and looking at totality of circumstances to "establish[] the origin of the offending behavior" to determine whether defendant was "sender" of fax).  As set forth above, here, there is <u>no</u> record evidence suggesting that any of the Charter Defendants (or any other Charter or TWC entity) is connected in <u>any way</u> to the Transmission at issue or had any involvement whatsoever in sending it.  Instead, the record evidence establishes the opposite.  (*See supra* § IV(A)(1)(a).)  Thus, even if the Court were to analyze whether the Transmission was sent on behalf of any of the Charter Defendants under a theory of liability other than agency, there would still be no basis on which to find any of the Charter Defendants was the sender.

For the foregoing reasons, none of the Charter Defendants can be considered the "sender" of the Transmission.  Plaintiff's TCPA claim fails for this threshold reason.

### 2.    *Plaintiff's TCPA claim fails because he consented to receive the sole Transmission at issue.*

Plaintiff's TCPA claim also fails because the undisputed record evidence shows that the Transmission was sent with Plaintiff's consent, and thus it is not actionable under the TCPA.

As an initial matter, Plaintiff is incorrect in his assertion in the Amended Complaint that "Defendants' failure to include a compliant opt-out notice [under 47 U.S.C. § 227(b)(2)(D)(iv)] on their fax advertisements makes irrelevant any express consent . . . that otherwise might have justified Defendants' fax advertising campaigns."   (ECF No. 44 ¶ 60 (citing 47 C.F.R. § 64.1200(a)(4)).)  As explained above, this allegation relies on a provision in the FCC's TCPA-

implementing regulations that was invalidated by *Bais Yaakov* one week after Plaintiff filed this action.  (*See* ECF No. 1 ¶ 57.)  In that case, the D.C. Circuit struck down the FCC's so-called "Solicited Fax Rule," which purported to require opt-out notices on faxes sent after the seller "obtained permission" to send a fax.  *See Bais Yaakov*, 852 F.3d at 1082 (striking down 47 C.F.R. § 64.1200(a)(4)(iv)).[7]  The D.C. Circuit reasoned that the TCPA does not "grant the FCC authority to require opt-out notices on solicited fax advertisements," and thus the FCC exceeded its administrative authority in adding that requirement via regulation.  *Id.*

Therefore, as it currently stands, the TCPA only prohibits sending an "<u>unsolicited</u> advertisement" to a fax machine without including an opt-out notice.  47 U.S.C. §§ 227(b)(1)(C) & (b)(1)(D) (emphasis added).  A fax is considered "unsolicited" only if it is sent without the recipient's "prior express permission, in writing or otherwise."  47 U.S.C. § 227(a)(5).  Providing a fax number is sufficient to grant prior express permission or invitation to the recipient send faxes. *See, e.g.*, *Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 57 (2d Cir. 2017) (in TCPA case involving phone calls, recognizing validity of proposition that "by furnishing their telephone numbers to businesses in connection with" applications, "plaintiffs provided . . . voluntary consent to be contacted" by businesses); *Practice Mgmt. Support Servs., Inc. v. Appeal Sols., Inc.*, No.

---

[7]  Though decided in the D.C. Circuit, *Bais Yaakov* is binding outside of the D.C. Circuit—including on this Court—because it addressed several petitions for review that had been consolidated in the D.C. Circuit by the United States Judicial Panel on Multidistrict Litigation. *See, e.g.*, *Sandusky Wellnes Cntr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 464, 467 (6th Cir. 2017) ("Once the Multidistrict Litigation Panel assigned petitions challenging the Solicited Fax Rule to the D.C. Circuit, that court became 'the sole forum for addressing . . . the validity of the FCC's rule' . . . [a]nd consequently, its decision striking down the Solicited Fax Rule became 'binding outside of the D.C. Circuit.'") (punctuation omitted) (quoting *Peck v. Cingular Wireless, LLC*, 535 F.3d 1053, 1057 (9th Cir. 2008)); *see also True Health Chiropractic, Inc. v. McKesson Corp.*, No. 16-17123, 2018 WL 3431723, at *5 (9th Cir. July 17, 2018) ("We agree with the reasoning of the Sixth Circuit and hold that we are bound by *Bais Yaakov*.").

09C1937, 2010 WL 748170, at *3 (N.D. Ill. Mar. 1, 2010) ("[W]e find that plaintiff's voluntarily [sic] communication of its fax number precludes [plaintiff] from asserting that the faxes were unsolicited under the TCPA.").[8]

Here, the undisputed record evidence establishes that the Transmission at issue was sent with Plaintiff's prior express permission, following a conversation between AICOM Philippines and Plaintiff, in which Plaintiff provided his fax number.  By way of further explanation, AICOM Philippines utilizes "lead lists" to pursue potential sales leads and contacts using the information available in such lists.  (SUMF ¶ 48.)  In his uncontroverted declaration, AICOM Philippines's Managing Director stated that the lead lists AICOM Philippines purchases from third parties do not include fax numbers. (SUMF ¶ 49.)  Thus, AICOM Philippines's routine business practice is to send faxes only "after receiving a potential customer's facsimile number from the customer, along with permission to send a facsimile to the customer, during a telephone conversation with the customer." (*Id.* ¶¶ 49–50.)  In this case, consistent with its routine business practice, AICOM Philippines called Plaintiff's New York telephone number, (212) 760-2400, and during that call, Plaintiff provided his number to AICOM Philippines such that AICOM Philippines could send Plaintiff a proposal for saving money on his telecommunications services.  (*Id.* ¶¶ 5–7, 51.) AICOM Philippines then sent the Transmission to that number.  (*Id.* ¶ 7.)

---

[8] *See also, e.g.*, *Landsman & Funk, P.C. v. Lorman Bus. Center, Inc.*, No. 08-cv-481-bbc, 2009 WL 602019, at *2 (W.D. Wis. Mar. 9, 2009) (granting motion to dismiss TCPA claim and holding that "[b]y sending its fax number to defendant, plaintiff cannot assert that the fax advertisements it received from defendant were 'unsolicited,' so as to fall within the category of fax advertisements regulated under 47 U.S.C. § 227"); *see In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005*, 21 F.C.C. Rcd. 3787, 3794 (2006) ("The provision of a telephone facsimile number to a business or other entity reflects a willingness to receive faxes from that entity.").

Though he purports to deny that this call occurred to the "best of his recollection," Plaintiff acknowledged during his deposition that he does not remember <u>any</u> specific calls during the period in which this call was placed and further admitted that it is "possible" the call with AICOM Philippines did occur.  (*Compare id.* ¶ 52, *with id.* ¶ 53.)  In light of this, Plaintiff cannot overcome AICOM Philippines's declaration or the overwhelming documentary evidence confirming that the call occurred, including AICOM Philippines's records, Plaintiff's own records, and the call records produced by Plaintiff's cellular telephone carrier, Verizon.  (*Id.* ¶¶ 5–7, 50–51, 54.)  Accordingly, Plaintiff is unable to create a genuine dispute of material fact suggesting that he did not provide consent to receive the fax at issue during a telephone conversation with AICOM Philippines.  For this additional reason, Plaintiff's TCPA claim fails.  *See, e.g.*, *Jackson v. Bederman*, No. 12 Civ. 1338, 2014 WL 2805242, at *8 (S.D.N.Y. June 20, 2014) ("Mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (citing *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010)); *see also Burns v. Bank of Am.*, 655 F.Supp.2d 240, 258 n.15 (S.D.N.Y. 2008) ("Plaintiffs' self-serving and unsubstantiated deposition testimony is insufficient to create a triable issue of fact as to the existence and amount of any alleged damages.")*.*

### 3.   *The Transmission is not subject to the TCPA because it was not sent over a telephone line and was not sent to a telephone facsimile machine.*

Finally, Plaintiff's TCPA claim should be dismissed because Plaintiff cannot satisfy his burden of showing that the Transmission at issue is even subject to the TCPA.  To the contrary, the undisputed record evidence confirms that the Transmission at issue is not subject to the TCPA because it was not sent over a telephone line to a "telephone facsimile machine."

As noted above, the TCPA applies to faxes sent "as a fax <u>over a telephone line</u> to a device that meets the statutory definition of 'telephone facsimile machine[.]'"  *In the Matter of Westfax,*

*Inc. Petition for Consideration & Clarification*, 30 F.C.C. Rcd. 8620, 8623 (2015) (*Westfax*) (emphasis added).  A "telephone facsimile machine" is defined as equipment with the capacity "(A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal <u>over a regular telephone line</u>, or (B) to transcribe text or images (or both) from an electronic signal received <u>over a regular telephone line</u> onto paper."  47 U.S.C. § 227(a)(3) (emphasis added); *see also* 47 C.F.R. § 64.1200(f)(13).  In contrast to transmissions sent to telephone facsimile machines over a telephone line, the FCC has made clear that "a fax <u>sent as an email</u> over the Internet—*e.g.*, a fax attached to an email message or a fax whose content has been pasted into an email message—is <u>not</u> subject to the TCPA[,]" as "the Commission has previously interpreted the TCPA to apply only to those [transmission] that begin as faxes."  *Westfax*, 30 F.C.C. Rcd. at 8623–24 (emphasis added).

The Transmission at issue in this case falls squarely within the latter category of transmissions not subject to the TCPA, as it was both sent and received as an email over the internet.  AICOM Philippines does not have a physical fax machine.  (SUMF ¶ 14.)  Instead, AICOM Philippines utilizes a "virtual fax service" (voip.ms) to send transmissions like the one at issue here.  (*Id.* ¶¶ 14–15.)  In this case, utilizing its voip.ms virtual fax service, AICOM Philippines sent the Transmission by attaching it to an email, typing Plaintiff's fax number into the subject field of the email, and sending it via email to "fax@voip.ms."  (*Id.*)

Like AICOM Philippines, Plaintiff does not have a physical fax machine, and instead utilizes the *myfax®* "virtual fax service."  (*Id.* ¶¶ 14, 16, 21.)  *Myfax®* is "an online faxing product . . . by which a customer can sign, send and receive faxes via email."  (*Id.* ¶ 17.)  Through MyFax, customers—like Plaintiff—receive faxes "as emails, with the fax attached as a PDF or TIFF[.]"  (*Id.* ¶ 18.)  Thus, "[u]nlike with traditional facsimiles,"—*i.e.*, those subject to the TCPA—"*myfax®*

19

subscribers use the internet, not a traditional phone line, to send and receive facsimiles[.]"  (*Id.* ¶ 19.)

Plaintiff cannot dispute any of this.  To the contrary, Plaintiff conceded in deposition that he did not know what technology was used to send the Transmission and did not know whether the Transmission ever "went through a telephone wire."  (*Id.* ¶ 20.)  Further, the information that Plaintiff did confirm in deposition supports the conclusion that the Transmission is not subject to the TCPA and was not received by a telephone facsimile machine, as Plaintiff testified that he receives all "fax" transmissions through the internet, "either by email or by logging into [his] MyFax account online," and that he did not even have telephone connectivity at his office.  (*Id.* ¶ 21.)

Because Plaintiff cannot raise a genuine dispute of fact concerning whether the Transmission was sent over a telephone line to a telephone facsimile machine, Plaintiff cannot satisfy his burden of showing that the Transmission is subject to the TCPA.  Plaintiff's TCPA claim fails for this additional reason.

## B.    Plaintiffs Conversion Claim Fails as to the Charter Defendants for Several Reasons.

The Charter Defendants are also entitled to summary judgment on Plaintiff's conversion claim, for several reasons.  First, the Charter Defendants cannot be held vicariously liable for AICOM Philippines's conduct in sending the Transmission at issue, as AICOM Philippines was not acting with any actual or apparent authority of the Charter Defendants.  Second, as shown above, Plaintiff consented to receive the Transmission, and it thus cannot constitute actionable conversion.  Third, Plaintiff cannot show that any alleged conversion harmed Plaintiff because Plaintiff's claimed intangible harm (loss of time) is not actionable, and Plaintiff cannot point to any evidence from which a trier of fact could quantify either that harm or Plaintiff's other claimed harm (loss of printer paper and toner).  Fourth, even if Plaintiff could quantify the latter, his claim

would still fail because the value of anything allegedly converted is at most *de minimis*, and thus not actionable.

### 1. Plaintiff's conversion claim fails as to the Charter Defendants because they cannot be vicariously liable for AICOM Philippines's allegedly tortious conduct.

As an initial matter, even if the Court determines that Plaintiff does have a viable conversion claim (he does not, as explained below), it nonetheless fails as to the Charter Defendants because the record evidence establishes that the Charter Defendants did not send the Transmission; AICOM Philippines did.  Thus, to hold the Charter Defendants liable for AICOM Philippines's conduct, Plaintiff would have to establish that they can be held vicariously liable, which would require establishing that AICOM Philippines acted with the Charter Defendants' actual or apparent authority.  *See, e.g.*, *DeAngelis*, 17 F. Supp. 3d at 286.  As set forth in Section IV(A)(1), *supra*, Plaintiff cannot meet this burden.  For this reason alone, Plaintiff's conversion claim fails against the Charter Defendants.

### 2. Plaintiff's conversion claim fails because Plaintiff consented to receive the Transmission.

As shown above in Section IV(A)(2), Plaintiff consented to receive the Transmission, and it thus cannot constitute actionable conversion.  To establish the tort of conversion, Plaintiff must show that he had a "possessory right or interest in the property" converted, and that the Charter Defendants exercised "dominion over the property or interfere[d] with it, in derogation of [P]laintiff's rights."  *See Colavito v. New York Organ Donor Network, Inc*., 827 N.Y.S.2d 96 (2006) (internal citations omitted).  It thus follows that consent or permission is a defense to such a claim.  *See Shyne v. L.R. Mack, Inc.*, 193 N.Y.S. 70, 71 (3d Dept. 1922) ("[W]here one entitled to the possession of property assents to the retention of the property by the owner, he may not recover for conversion thereof); *see also Newbro v. Freed*, 409 F. Supp. 2d 386, 397 (S.D.N.Y

2006) (holding conversion occurred where plaintiff "lost possession [of his property] *without his consent*") (emphasis added).  For this additional reason, Plaintiff's conversion claim fails.

### 3. *Plaintiff's conversion claim fails because Plaintiff cannot show that any alleged conversion harmed Plaintiff.*

Even if the Charter Defendants sent the Transmission (they did not) and even if Plaintiff did not consent to it (he did), Plaintiff's tag-along conversion claim would still fail because the undisputed record evidence shows that Plaintiff cannot identify the amount of damages—if any— attributable to any alleged conversion.  Under black-letter law, damages are an essential element of conversion on which Plaintiff bears the burden of proof.  *See Nakano v. Jamie Saddock, Inc.*, No. 98 CIV. 0515, 1999 WL 1225259, at *5 (S.D.N.Y. Dec. 20, 1999).

Though Plaintiff alleges in the First Amended Complaint that "Plaintiff and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose" (ECF No. 44 ¶ 73), Plaintiff later admitted that this paragraph "could be worded better"—because he does not even own a fax machine—and that the only "damages" he allegedly suffered were loss of his own time and use of his electronic fax service.  (SUMF ¶¶ 55–56.)  But the tort of conversion does not apply to intangible assets such as Plaintiff's time and use of software.  *See MBF Clearing Corp. v. Shine*, 212 A.D.2d 478, 479, 623 N.Y.S.2d 204, 206 (1995) (in affirming summary judgment on conversion claim based on alleged conversion of "time, assets, associations, employees' services and equipment[,]" holding "a cause of action for conversion of intangible property is not actionable under New York law").[9]

_____

[9] *See also, e.g.*, *Obeid ex rel. Gemini Real Estate Advisors LLC v. La Mack*, No. 14 CV 6498-LTS-HBP, 2018 WL 205963, at *27 n.29 (S.D.N.Y. May 1, 2018) (granting summary judgment and dismissing breach of fiduciary duty claim based on alleged conversion of employee time, holding "time . . . as an intangible asset may not be converted under New York law") (citing *Shine*, 212 A.D.2d at 479, 623 N.Y.S.2d at 205).

And even if such these intangible losses and damages could support Plaintiff's conversion claim, it still fails as Plaintiff cannot identify with any particularity the amount of any such losses. With respect to his time, Plaintiff admitted that he did not know how much time he spent reviewing the single Transmission and that he has no documents that would reflect this.  (SUMF ¶ 57.)  And Plaintiff's claim for alleged interference with Plaintiff's use of his *myfax*® service is based solely on "the fact that [*myfax*®] has transmission times, and sometimes faxes fail"—whatever that means—though Plaintiff admitted he has no idea "what causes faxes to fail[.]"  (*Id.* ¶ 59.)  Plaintiff also admitted that his *myfax*® service never interfered with his telephone or emails, and even if it had, Plaintiff "was not billed for [telecom service]," so he could not have suffered any pecuniary loss.  (*Id.* ¶ 58.)

The same result obtains even if the Court considered Plaintiff's originally claimed—and later disclaimed—damages (*i.e.*, loss of paper and toner).  That is because Plaintiff repeatedly and unequivocally conceded that he could not identify any damages attributable to any alleged conversion in deposition, going so far as to claim that the actual value of anything converted was "irrelevant:"

- "Q: Do you have any – any position about the value of what was converted at all? A: No, it's up to a judge or a jury.  Q: You just don't know; correct?  A: How much I value it? It's irrelevant."

- "Q: Do you have any idea of the total value of damages you're seeking for your conversion claim?  A: I'd like to leave it up to a judge or a jury, and I'd like to help – have my lawyer help me."

- "Q: What is the amount of damages that you're seeking based on the conversion cause of action?  A: I'd like to leave it up to a judge or a jury . . . Q: Do you know? A: Do I – I don't know to the penny, no."

(*Id.* ¶ 60.)  The only firm estimation of damages attributable to the alleged conversion that Plaintiff provided was "[p]robably $100, $100 or $150," though Plaintiff went on to concede that that was

"not a firm number" and that the amount of Plaintiff's damages "might even change with [Plaintiff's] mood." (*Id.* ¶ 61.)

In light of Plaintiff's failure to create a genuine dispute of material fact as to any damages attributable to any alleged conversion, Plaintiff's conversion claims should be dismissed.[10] *See, e.g.*, *Nakano*, 1999 WL 1225259, at *5; *Meyer*, 2017 WL 5138316, at *7–10 (granting summary judgment and dismissing piggyback conversion claim in TCPA fax case because plaintiffs "have not—and cannot—establish the cost of their alleged losses.  First, had they had any such evidence, they surely would have presented it at this summary judgment phase.  And second, Plaintiffs all testified in depositions that they could not quantify the amount of their losses."); *see also* Glenn, John A., 90 C.J.S. Trover and Conversion § 97 ("The plaintiff has the burden of proving the damages sustained and, for this purpose, must show the value of the property.") (collecting cases).

### 4. Plaintiff's conversion claim fails because the value of anything allegedly converted is at most **de minimis** and thus not actionable.

Even if Plaintiff were able to create a genuine issue of material fact as to whether he suffered any damages attributable to any alleged conversion (he cannot, given his deposition testimony), Plaintiff's conversion claim still fails because the value of anything converted is at most *de minimis*.  It is a fundamental tenet of tort law that conversion claims do not lie where the value of the allegedly converted property is *de minimis*.  *See, e.g.*, *TigerCandy Arts, Inc. v. Blairson Corp.*, No. 09 Civ. 6215 (GBD) (FM), 2012 WL 1948816, at *4 (S.D.N.Y. May 30, 2012)

---

[10]  For this same reason, Plaintiff lacks standing to assert his TCPA claim in light of the Supreme Court's opinion in *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S.Ct. 1540, 1548 (2016), that a plaintiff does not automatically satisfy Article III's injury-in-fact requirement "whenever a statute grants a person a staturoy right and purports to authorize that person to sue to vindicate that right."  *See, e.g.*, *ARcare v. Qiagen N. Am. Holdings, Inc.*, No. CV 16-7638 PA (ASX), 2017 WL 449173, at *3 (C.D. Cal. Jan. 19, 2017) (dismissing TCPA-junk-fax claim under *Spokeo* because plaintiff "alleged a 'bare procedural violation' which is 'divorced from any concrete harm' caused by [defendant's] alleged violation of the TCPA").

(dismissing conversion claim where "value of [items allegedly converted] would be *de minimis*"
and concluding plaintiff was "not entitled to additional damages based on [the conversion] claim").
In the TCPA context, courts have held time and time again—in cases brought by the same firm
representing Plaintiff in this case, no less—that the alleged receipt of a single, unsolicited
transmission does not constitute actionable conversion.  *See, e.g.*, *Am.'s Health & Res. Ctr., Ltd.
v. Promologics, Inc.*, No. 16 C 9281, 2017 WL 5001284, at *4 (N.D. Ill. Nov. 2, 2017) (dismissing
piggyback conversion claim based on alleged receipt of single unsolicited fax in TCPA action
brought by Plaintiff's counsel, as "[t]he most [p]laintiffs can hope to gain from a favorable
judgment on [such claim] is a few pennies") (punctuation omitted); *G.M. Sign, Inc. v. Elm Street
Chiropractic, Ltd.*, 871 F.Supp.2d 763, 768 (N.D. Ill. 2012) (same, noting that "[t]he loss of a
single sheet of paper and a miniscule amount of toner . . . is too trivial an injury to amount to an
actionable conversion"); *Savanna Group, Inc. v. Truan*, No. 10 C 7995, 2011 WL 703622, at *3
(N.D. Ill. Feb. 22, 2011) (same); *Stonecrafters, Inc. v. Foxfire Printing and Packaging, Inc.*, 633
F.Supp.2d 610, 613–15 (N.D. Ill. 2009) (same).

As in each of the foregoing cases, Plaintiff's conversion claim here is based on the alleged
receipt of a single transmission.  (*See, e.g.*, ECF No. 44 ¶ 2 & Ex. A; SUMF ¶ 62.)  But here,
Plaintiff's claim here is even more specious than in the foregoing cases, as Plaintiff received the
Transmission via the internet, not on a fax machine that automatically printed it and automatically
used his paper and toner.  (*Id.* ¶¶ 14, 16–19, 23.)  Instead, here, Plaintiff printed the Transmission
only because he affirmatively <u>chose</u> to do so.  (*Id.* ¶ 23.)  Furthermore, as noted above in Section
IV(B)(3), Plaintiff expressly disclaimed that he was even seeking damages based on loss of paper

and toner and noted that the reference to such damages in the First Amended Complaint "could be worded better."  (SUMF ¶¶ 55–56.)

Accordingly, Plaintiff's conversion claim fails for this third reason.

**C.     Plaintiff Lacks Standing to Bring the Instant Action Because He Assigned His Claims Away.**

Even if Plaintiff's claims could survive summary judgment scrutiny, they would still fail because Plaintiff assigned such claims to his virtual fax service, *myfax®*.  Where a party assigns a claim to a third party, the assignor thereafter lacks standing to bring such a claim.  *See, e.g.*, *Clarex Ltd. v. Natixis Secs. Am., LLC*, No. 12 Civ. 0722(PAE), 2012 WL 4849146, at *6 (S.D.N.Y. Oct. 12, 2012) (citing *Two Pepper Music v. Rhino Records, Inc.*, 173 F.3d 846 (2d Cir. 1999); *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Inat'l Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984); *Amusement Indus., Inc. v. Stern*, No. 07 Civ. 11586(LAK), 2011 WL 6811018, at *4 (S.D.N.Y. Dec. 28, 2011)).

Here, Plaintiff's contract with *myfax®* clearly states:

> You hereby acknowledge and agree that the Company, as owner of all MyFax Numbers, has any and all rights (but no obligation) to assert ***any and all legal claims available against any third party as a result of your receipt of any unsolicited fax advertisements, including but not limited to claims under the TCPA*** and similar laws of any other country, state or province, and, to the extent you do have any rights to bring any such claims, you hereby assign any and all such rights to the Company as consideration for its provision of the Service.

(SUMF ¶¶ 24–25.)   Thus, here, Plaintiff has "conferred the right to seek redress" for the Transmission to *myfax®*.  *See Clarex*, 2012 WL 4849146, at *6.  As such, Plaintiff "d[oes] not have standing to bring" the instant suit, and Plaintiff's claims should be dismissed.  *Id.*

**D.     Plaintiff's Request for Injunctive Relief Fails as a Matter of Law.**

Finally, Plaintiff's request for injunctive relief fails as a matter of law for several additional reasons.  <u>First</u>, Plaintiff conceded in deposition that the only Transmission he has ever received

allegedly advertising Time Warner Cable or Charter was over a year-and-a-half ago, and he has no reason to believe he will receive similar transmissions in the future. (SUMF ¶ 63.) Thus, Plaintiff's claim for injunctive relief is moot. *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109 (2d Cir. 2016) (claim moot because there was "no reasonable expectation that the alleged violation will recur") (quotation marks omitted); *see also Miller v. Time Warner Cable Inc.*, No. 8:16-CV-00329-CAS-ASX, 2016 WL 7471302, at *4 (C.D. Cal. Dec. 27, 2016) (dismissing "claim" for injunctive relief in TCPA action where "[p]laintiff present[ed] no evidence rebutting defendant's evidence that it has respected plaintiff's request not to be called and ceased calling plaintiff approximately eight months before th[e] action was brought"). And second, injunctive relief is not available when a party has an adequate remedy at law. *See, e.g.*, *N. Cal. Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306, 1306 (1984) ("A party seeking an injunction from a federal court must invariably show that it does not have an adequate remedy at law.").[11] Here, assuming Plaintiff has any viable claim (he does not), he would also have an adequate remedy at law, in the form of substantial statutory damages under the TCPA. *See* 47 U.S.C. § 227(b)(3) (providing for the award of statutory damages up to $1,500 for each willful or knowing violation, and $500 or greater for other violations of the statute).

## V.   CONCLUSION

When Plaintiff filed this action, he thought he had a "gotcha" claim against the Charter Defendants because they or some "agent" of theirs sent a transmission that did not have an opt-out notice. But the D.C. Circuit invalidated the FCC rule requiring opt-out notices on solicited faxes

---

[11] *See also eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-92 n.2 (2006) (in patent case, holding party seeking permanent injunction must prove "irreparable injury" and that "remedies available at law, such as monetary damages, are inadequate to compensate for that injury"); *Salinger v. Colting*, 607 F.3d 68, 78 n.7 (2d Cir. 2010) ("[W]e see no reason that eBay would not apply with equal force to an injunction in any type of case.").

a week after Plaintiff filed his Complaint, and the undisputed record evidence confirms the Transmission was solicited because it was sent with Plaintiff's consent to the number he provided to AICOM Philippines.  Further, discovery proved false Plaintiff's allegation that the Charter Defendants sent or had any involvement in sending the Transmission, as well as Plaintiff's allegation that he received the Transmission at issue on a "telephone facsimile machine." Discovery also proved that Plaintiff suffered no actionable damages as a result of his choice to print the single Transmission (that he agreed to receive), and it also revealed that he assigned away the claims he purports to assert in this action.  For these reasons and the others explained herein, the Charter Defendants respectfully request the Court enter summary judgment in their favor as to both of Plaintiff's claims and dismiss the instant action in its entirety.[12]

Dated: August 3, 2018

Respectfully submitted,

**KABAT CHAPMAN & OZMER LLP**

By:   *s/Daniel H. Gaynor*
      Ryan D. Watstein *(pro hac vice)*
      Email: rwatstein@kcozlaw.com
      C. Celeste Creswell *(pro hac vice)*
      Email: ccreswell@kcozlaw.com
      Daniel H. Gaynor *(pro hac vice)*
      Email: dgaynor@kcozlaw.com
      KABAT CHAPMAN & OZMER LLP
      171 17th Street NW, Ste. 1550
      Atlanta, GA 30363
      Telephone: 404-400-7300

      *Counsel for Defendants Time Warner Cable LLC, Time Warner Cable Media LLC, Charter Communications, Inc., Charter Communications Operating, LLC*

---

[12] The only Defendant named in this action other than the Charter Defendants is AICOM Solutions, LLC.  Plaintiff's claims fail as to that entity for many of the same reasons they fail as to the Charter Defendants.  Further, Plaintiff never even served AICOM Solutions, LLC.  (*See* ECF Nos. 9, 39.) Thus, this action should be dismissed in its entirety as to all Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2018, I electronically filed the foregoing in the United States District Court for the Southern District of New York using the CM/ECF system which will automatically send e-mail notification of such filing to any counsel that has entered an appearance.

This 3rd day of August, 2018.

/s/ Daniel H. Gaynor
Daniel H. Gaynor

*Counsel for Defendants Time Warner Cable LLC, Time Warner Cable Media LLC, Charter Communications, Inc., Charter Communications Operating, LLC*

29